[Civ. No. 8634. First Appellate District, Division One.—April 29, 1933.]

In the Matter of the Estate of GEORGE AMPUSAIT, Deceased. MAY TRUSS, Respondent; JOSEPH AMPUSAIT et al., Appellants.

534

Ford & Johnson for Appellants.

A. S. Whitmore and Paul A. McCarthy for Respondent.

KNIGHT, J.—This is an appeal from an order vacating a decree of final distribution. The legal sufficiency of the moving papers and the evidence upon which the order is based is not challenged. The single point involved is whether certain findings as to heirship, and a decree of partial distribution based thereon, made and entered some two and a half years prior to the granting of final distribution, to which respondent, who is decedent's daughter, was not a party and of which she had no knowledge, precluded her from asserting her right of inheritance as such daughter at the time of final distribution.

The facts leading up to the making of the order appealed from were substantially as follows: The decedent, George Ampusait, was a resident of Alameda County. He died in May, 1924, leaving an estate consisting of more than $10,000 in cash. The public administrator of that county was appointed administrator of the estate. As stated, respondent is the decedent's daughter, and at all times herein mentioned resided in Los Angeles. Appellants are respectively the surviving brother, nieces and nephews of the decedent. In December, 1926, appellants filed an unverified petition for the partial distribution of $10,000. Their relationship to the decedent was alleged therein; but nowhere in said petition was it indicated that the decedent

was survived by a daughter; nor was it alleged that the persons specified in said petition were the next of kin of said decedent or sole surviving heirs. The hearing of the petition was set for a date in January, 1927, and in conformity with the requirement of the statute notice thereof was given to the administrator personally and to all other persons interested, by posting, but the matter was not heard until June, 1927, at which time, from the evidence then before it the court made certain findings, which upon the issue of heirship, were as follows: "That said deceased left him surviving, petitioner Joseph Ampusaitis, who is a brother of said deceased, and petitioners Siegmund Krause, Anna Krause, Karl Krause and August Krause, who are nephews and niece of said deceased. Said deceased also left him surviving Joseph Krause, who is a nephew of said deceased, and that all of said nephews and said niece hereinbefore mentioned are the children of a predeceased sister of said deceased. Said deceased also left him surviving, Anna Vosilitiene, Karolis Krause, Joseph Krause and Adelia Scheuber, who are nieces and nephews of said deceased, and Richard Nestle and Oscar Nestle, who are grand-nephews· of said deceased, and that said last mentioned nephews and nieces and grandnephews are the children and grandchildren of another predeceased sister of said deceased." Continuing the court found that said deceased "left him surviving no wife, issue, father or mother and no other brother and no sister and no other nieces or nephews or grandnieces or grandnephews, and that said brother and said nieces and nephews and said grandnephews are his only heirs at law. That said brother of said deceased is entitled to one-third of said estate, that said nephews and nieces are each entitled to one-fifteenth of said estate, and said grandnephews are each entitled to one-thirtieth of said estate." The conclusions of law were that $900 should be distributed as follows: To Joseph Ampusaitis, $500; Siegmund Krause $100; Anna Krause, $100; Karl Krause, $100, and August Krause, $100. No distribution was made to the remaining relatives mentioned in the findings.

The decree of partial distribution was entered on the same day. It recited "that petitioner Joseph Ampusaitis is a brother and heir at law of said deceased, and that Siegmund Krause, Anna Krause, Karl Krause and August

Krause are nieces and nephews and heirs at law of said deceased and are the children of a predeceased sister of said deceased, and that petitioners are entitled to partial distribution of said estate''. But said decree contained no recital or finding as to the existence or nonexistence of other heirs. About two and a half years later and on December 2, 1929, the administrator filed his final account and petition for final distribution. The account showed that there was then on hand $14,495.94 awaiting distribution. The statutory requirements as to giving notice by posting were complied with and on December 12, 1929, after a hearing, the court made its decree of settlement and final distribution. In said decree the court found that ''the names, ages, and residences of the heirs at law of said deceased are: Joseph Ampusait, brother, Siegmund Krause, nephew, Anna Krause, niece, Karl Krause, nephew, August Krause, nephew, Anna Vosilitiene, niece, Karolis Krause, also known as Charles Krause, nephew, Joseph Krause, also known as Joseph Wiatkiawicia, nephew, Adelia Scheuber, niece, Richard Nisselit, also known as Richard Nestle, grandnephew, Oscar Nisselit, also known as Oscar Nestle, grandnephew, Anna Nisselit, also known as Ann Nestle, grandnieces''; and the amount of cash above mentioned was ordered distributed to said persons in proportion to the degree of their relationship to the decedent. As stated, respondent was not a party to either proceeding, nor was she aware that either had been instituted.

Shortly after the rendition of the decree of final distribution, it was set aside on motion of respondent made under the authority of section 473 of the Code of Civil Procedure. The evidence adduced in support of the motion consisted of two affidavits, one of which was made by respondent. In it she averred that she was the decedent's daughter, and that within a month after the appointment of the administrator she called on him at his office in Oakland, and informed him of such fact; that he advised her to secure the services of a certain attorney in that county to look after her interest, which she did; that on numerous occasions afterwards she conferred with said attorney and believed that he was protecting her interests; that on or about October 31, 1929, she became apprehensive as to whether her interests were being properly safeguarded and

she consulted an attorney in Los Angeles, who through correspondence with the administrator ascertained that no appearance had been filed in her behalf in the matter of said estate; that thereupon said attorney caused an investigation to be made as to the condition of the estate; but that before other counsel could be retained in or near the county wherein the estate was pending settlement, and without knowledge on her part, final distribution of the estate was applied for and granted. The other affidavit was made by one of respondent's present attorneys, who, besides corroborating many of the facts set forth in respondent's affidavit, stated that within a week after the granting of the decree of final distribution he called at the office of the attorney theretofore retained by respondent at the suggestion of the administrator and learned that said attorney was then on an ocean voyage and would not return until the middle of the following month. Consequently, without awaiting his return, the motion to vacate the said decree was prepared, filed and presented. No counter-affidavits were filed, nor did appellants otherwise challenge the truth of the statements made in the affidavits presented on behalf of respondent. But as a bar to the granting of the motion appellants introduced in evidence the decree of partial distribution and the findings upon which it was based; and it was contended before the trial court, as here, that said decree and findings constituted a final adjudication upon the issue of heirship, and that conceding respondent to be the decedent's surviving daughter, she was precluded thereby from asserting any rights as such to any portion of the residue of said estate.

We are unable to sustain the foregoing contention. It is true, of course, that under the provisions of the code sections relating to partial distribution as they existed at the time these proceedings took place (secs. 1658 to 1661, incl., Code Civ. Proc.), before partial distribution could be granted on petition of an heir, in the matter of the estate of an intestate, it was necessary for the court to determine from the evidence then before it whether or not those petitioning were entitled to share in the portion of the estate about to be distributed in that particular proceeding, and its decree was made accordingly. It is true also that unless set aside on appeal or under the provisions

of section 473 of the Code of Civil Procedure said decree became final and conclusive as to the portion of the estate thereby distributed (*Estate of Tymms,* 78 Cal. App. 79 [247 Pac. 1091]), and as to the heirs who were parties to the proceeding, or who were aware of the pendency of the proceeding and made no objection thereto or appearance therein (*Estate of Murphy,* 145 Cal. 464 [78 Pac. 960]); but none of the cases cited by appellants go to the extent of holding, as they argue, that a decree rendered in such a proceeding is controlling upon the issue of heirship at the time of final distribution, as against those heirs who, like the respondent, were unaware of the proceeding on partial distribution, were not parties to it, and whose existence was not known to the court at the time such proceeding was heard and determined, and consequently whose claims were never before the court to be considered or passed upon. And manifestly, to hold that under the foregoing conditions a rightful heir is precluded from asserting his or her right of inheritance on final distribution would necessarily violate some of the fundamental principles upon which the doctrine of *res adjudicata* is founded. As said in the *Estate of Blake,* 157 Cal. 448, 457 [108 Pac. 287, 291]: "The rule of the authorities is that a judgment in a proceeding *in rem* where there has been no contest or litigation is *res adjudicata* with respect to the matter or *res* actually involved in the proceeding and is *res adjudicata* as to any fact which affected the particular matter or *res* involved in it and this is as far as it operates. The judgment cannot be invoked as *res adjudicata* in a subsequent proceeding which affects other property. (*Cromwell* v. *County of Sacramento,* 94 U. S. 351 [24 L. Ed. 195]; *Overby* v. *Gordon,* 177 U. S. 214 [20 Sup. Ct. 603, 44 L. Ed. 741]; 1 Freeman on Judgments, sec. 253.)" In other words, as held in the *Estate of Bloom,* 213 Cal. 575 [2 Pac. (2d) 753], judgments *in rem* are binding upon persons who are not parties to or participants in the proceeding only so far as the status, title or other *res* constituting the subject matter is adjudicated.

Nor is there anything in the code sections relating to the granting of partial distribution of the estate of an intestate authorizing the court, in a proceeding instituted thereunder to determine definitely and finally the issue of

heirship. As will be seen from an examination of those sections, they go no further than to empower the court to pass upon the right of the party or parties petitioning for partial distribution to share in that portion of the estate about to be distributed. And as will be noted, the terms of the decree of partial distribution in the present case do not extend beyond such limitation. True, the findings declare that the decedent left no issue, but the findings are evidently of little, if any, value because there is nothing in said code sections authorizing the making of findings separate from those contained in the decree itself. Furthermore, it was in substance held by the Supreme Court in the early case of *Smith* v. *Westerfield*, 88 Cal. 374 [26 Pac. 206], that the issue of heirship could be definitely determined only by a special proceeding instituted pursuant to section 1664 of said code (which doubtless authorizes the making of findings) or upon or after the settlement of the final accounts of the administrator. And even in cases of a special proceeding to determine heirship, the section governing the same (sec. 1664) contains this saving clause: "Nothing in this section contained shall be construed to exclude the right upon final distribution of any estate to contest the question of heirship, title, or interest in the estate so distributed, where the same shall not have been determined under the provisions of this section; but where such questions shall have been litigated, under the provisions of this section, the determination thereof as herein provided shall be conclusive in the distribution of said estate."

The *Estate of Spreckels*, 165 Cal. 597 [133 Pac. 289, 291], which is one of the cases emphasized by appellants in support of their contention, is not in point; and the manner in which a portion of the opinion therein is quoted on page seven of their opening brief, is clearly misleading. The matter of determination of heirship was not there involved. The case dealt with the question of the validity of certain trust clauses in the will pursuant to which some of the beneficiaries thereunder sought partial distribution, and the trial court denied the same upon the ground that the trust clauses were invalid. An appeal was taken and the trial court's decision was reversed (*Estate of Spreckels*, 162 Cal. 559 [123 Pac. 371]), the Supreme Court holding that the

trust clauses were valid. Thereupon the beneficiaries renewed their application in the trial court for partial distribution and also petitioned for final distribution. Both petitions were granted, and appeals were taken from the decrees thus made. On these appeals the Supreme Court held in effect that its judgment of reversal on the former appeal sustaining the validity of the trust clauses and the will was conclusive as against appellants who were parties to the appeal, and consequently was *res adjudicata* as to who were entitled to take the estate on final distribution; and that since the subsequent decrees made by the superior court conformed to said judgment of reversal they were correctly made. The portion of the court's opinion dealing with this phase of the appeal was as follows: "On May 28, 1912, these respondents applied to the superior court for partial distribution as asked under said original application therefor of August 23, 1909, and, on the same day a decree therefor was made. *This is the subject of one of the present appeals now under consideration—No. 6356. On May 29, 1912, the respondents under the proceedings for final distribution heretofore mentioned, applied for distribution to them under the terms of the will, and a decree to that effect was made May 31, 1912. This is the subject of the other appeal now under consideration—No. 6358. These decrees were made in conformity with the terms of the will and the judgment of this court sustaining its validity rendered on the appeals from the order denying partial distribution.* That judgment is conclusive on the appellants who were parties to the proceedings in which it was rendered, is *res adjudicata* as to who were entitled to take the estate on distribution, *and the decrees appealed from made in favor of respondents in conformity with it were correctly made, unless the attack which appellants make on the judgment of this court on the former appeals is to be sustained."* The portions of the opinion above italicized (except the term *"res adjudicata"*) are omitted from the quotation in appellants' brief. The language quoted by appellants from *In re Jessup,* 81 Cal. 408 [21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594], is merely to the effect that a party is not compelled to resort to the proceeding set up for the determination of heirship by section 1664 of said code, before applying for partial distribution. The point in the *Estate*

*of Murphy, supra,* was simply that an executrix of a will, who was also a devisee thereunder, and who as such devisee failed to appear and object to the granting of partial distribution was bound thereby. The legal principle adhered to in the *Estate of Tymms, supra,* and in *Estate of Nolan,* 145 Cal. 559 [79 Pac. 428], was that a decree of partial distribution or an order directing the payment of money, in the absence of appeal therefrom, is *res judicata* as to the portion of the estate thus distributed and as to the money directed to be paid. Here respondent concedes that as to the $900 distributed to appellants on partial distribution, the decree is final. The remaining cases cited by appellants relate either to the question of the conclusiveness of a decree of final distribution, with which we are not here concerned, or to points not pertinent to the present inquiry.

The order is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 26, 1933.